## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION


**WILLIAM ARSIS,**

      **Plaintiff,**

**vs.**                                  **Case No. 4:07cv115-SPM/WCS**

**JESSICA GOODIN,**
**PAUL COLEY, and**
**JUNE CORBITT,**

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

      Defendants Coley and Corbitt filed a motion to dismiss or for summary judgment, doc. 32, and later clarified they were seeking summary judgment.  Defendants were directed to file a statement of undisputed material facts, doc. 35, and they did so on January 31, 2008.  Doc. 38.  Plaintiff, who is *pro se*, was advised of his obligation in responding to the summary judgment motion under FED. R. CIV. P. 56, doc. 35, and was given until February 29, 2008, to do so.  Docs. 35 and 39.   Plaintiff has not filed a response.


**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. <u>Hickson Corp. v. Northern Crossarm Co., Inc.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, <u>Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Hickson Corp.</u>, 357 F.3d at 1260, *quoting* <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. <u>Watkins v. Ford Motor Co.</u>, 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of

evidentiary materials listed in Rule 56(c).  <u>Owen v. Wille</u>, 117 F.3d at 1236; <u>Celotex</u>, 477

U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be

accompanied by a separate, short and concise statement of the material facts as to

which the moving party contends there is no genuine issue to be tried.  Failure to submit

such a statement constitutes grounds for denial of the motion."  The Local Rule also

provides that the statement "shall reference the appropriate deposition, affidavit,

interrogatory, admission, or other source of the relied upon material fact, by page,

paragraph, number, or other detail sufficient to permit the court to readily locate and

check the source."  The Local Rule provides that the party opposing the motion shall

serve a similar statement of material facts as to which the party contends there is a

genuine issue to be tried, using the same format.  Finally, the Local Rule provides that

the movant's properly filed statement of undisputed facts will be deemed to be admitted

unless controverted by the opposing party in the manner specified by the Rule.  *See*

<u>Jones v. Gerwens</u>, 874 F.2d 1534, 1537 n.3 (11th Cir. 1989) (determining that plaintiff's

failure to controvert defendants' statement of undisputed facts filed in compliance with a

similar local rule of the Southern District of Florida constituted an admission that such

facts were not disputed for summary judgment purposes.)

**Allegations of the Third Amended Complaint, doc. 17**

Plaintiff alleged that while he was housed at the Florida State Hospital as "a

mental patient on medication" from April 15, 2006, though August 12, 2006, he was

sexually harassed and assaulted by Defendant Jessica Goodin, an employee of the

hospital.  Plaintiff alleged that Defendant Goodin took Plaintiff off the grounds of the

hospital and they had sex numerous times in an abandoned school bus on her grandfather's property.  In May or June, Defendant Goodin stopped working at the hospital, but continued to visit Plaintiff and brought him contraband, such as cigarettes, marijuana, and photographs of herself.  Defendant Goodin allegedly persuaded Plaintiff to give her many personal items on the "pretense that she loved him and would have a home with all his property waiting for him upon release from the hospital."  Doc. 17.

Plaintiff alleged that Defendant Paul Coley, the building director at the hospital, ordered all staff to "prevent Plaintiff from using the telephone, exiting the building, receiving mail and visits, going to any class and the law library" and deprived Plaintiff of the ability to participate in treatment.  Plaintiff contends Defendant Coley was trying to keep Defendant Goodin and Plaintiff "apart from each other."  *Id.*

Plaintiff also alleged that Defendant June Corbitt lied to the head doctor at the hospital that Plaintiff "claimed to be seeing visions and hearing voices."  The head doctor changed Plaintiff's medications and those drugs caused unspecified "physical harm to the Plaintiff."  Defendant Corbitt obtained "a court order" on July 13, 2006, permitting hospital staff to "use force to make Plaintiff take such drugs."  Corbitt told Plaintiff she would "make sure" he spent the remainder of his life in prison and completed a "competency evaluation for the Plaintiff in order to send Plaintiff back to jail."  Defendant Corbitt also submitted a summary report indicating Plaintiff would "malinger in court."  Plaintiff contends the report should only be completed by the hospital administrator and all parties should have received a copy of the report, but Plaintiff did not.  *Id.*

Plaintiff claimed that all of the Defendants are close friends, all live in the same town, attend the same functions, and are part of "a truly corrupt organization."  Doc. 17. He claimed Defendant Corbitt deprived Plaintiff "of his constitutional right not to be compelled to take harmful medications which did cause physical injury."  *Id.*  Plaintiff states that he "since suffers from acute kidney and liver pains and has trouble urinating."  *Id.*  Plaintiff also claimed that Defendants subjected him to cruel and unusual punishment, involuntary servitude, and violated his due process rights.  *Id.*

**The relevant Rule 56(e) evidence**

Defendants Coley and Corbitt have submitted affidavits in support of the summary judgment motion.[1]  Doc. 27, attachments.  For the past four years, Defendant Paul Coley has been the Unit Treatment and Rehab Director for Unit 4 at the Florida State Hospital in Chattahoochee, Florida.  Doc. 27, ex. A (doc. 27-2).[2]  Defendant Coley manages and supervises the "state mental health forensic step-down facility with 125 employees which houses 116 residents committed under Chapters 916 and 394, Florida Statutes, as a treatment unit of the Florida State Hospital."  *Id.*  Plaintiff was a resident at the hospital having been "declared incompetent" in his criminal proceedings and ordered hospitalized.  Doc. 27, ex. A, p. 2 (doc. 27-2).  Between July 29, 2006, and

---

[1] The motion is not filed on behalf of Defendant Goodin as there had been service problems in reaching her.  The docket reflects that this Defendant did waive service of process on January 9, 2008, and should have filed an answer or other response to the complaint within 60 days.  Doc. 36.  Defendant Goodin is in default as no response has been received from her.

[2] Hereafter, all references to exhibits are to those attached to document 27, unless otherwise noted.  References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket.  Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

August 12, 2006, "Plaintiff was under a restriction of access to prevent a security breach and to safeguard Plaintiff, the transporting officers and the public." *Id.* As a safety measure, "no resident is informed of the particular date and time that he will be transported from the Hospital." *Id.* Somehow, despite that precaution, Plaintiff learned the particulars of his departure schedule and relayed that information to members of his treatment team. *Id.* When it was discovered that the information Plaintiff shared "was indeed the actual [transport] schedule," Defendant Coley "immediately placed security restrictions on [Plaintiff's] access, ingress and egress from the unit to remain in effect until his departure upon discharge on August 12, 2006." *Id.*, at 3. Plaintiff could still communicate via the "telephone with his attorney and his mother who was his legal guardian." *Id.* Plaintiff was also restricted to "his residence unit and could not wander the grounds of the Hospital which are not gated or fenced." *Id.* The restrictions were only in place for the final two weeks of Plaintiff's "stay at the Hospital and were only restrictive enough to secure him on the premises and make sure that he did not communicate this sensitive information to anyone else." *Id.* These restrictions did not in any way interfere with his "right to participate in his treatment" at the Hospital. *Id.*

Plaintiff had no other restrictions on "his daily routine." Doc. 27, ex. A, p. 3 (doc. 27-2). He was able to attend all assigned classes, had access to law library materials, could use the telephone to speak with his mother and his attorney, and had "access [to] his treatment team and all relevant members of the staff of the Hospital." *Id.* Review of Plaintiff's file showed that Plaintiff refused to attend competency classes "on many occasions." *Id.*

Defendant June Corbitt is "a Psychological Specialist at the Florida State Hospital" and monitors the "competency of patients who come to the Hospital after a termination of incompetency to proceed in their criminal cases has been made."  Doc. 27, ex. B, p. 1 (doc. 27-2).   Defendant Corbitt is responsible to periodically report to the Circuit Judge about a patient's progress and ability to return to participate in his pending criminal proceedings.  Doc. 27, ex. B, p. 2 (doc. 27-2).  Defendant Corbitt was part of Plaintiff's treatment team and, as such, she "had direct responsibility for determining his competency while in the custody of the Florida State Hospital" and reporting on such to the Circuit Judge.  *Id.*

Plaintiff's treatment at the Hospital, like all residents, "consists of a combination of medication and competency group participation."  Doc. 27, ex. B, p. 2 (doc. 27-2). Defendant Corbitt cannot prescribe medication; Plaintiff's medications were prescribed by his treating Psychiatrist.  *Id.*  During the relevant time frames set forth in the Third Amended Complaint, "Plaintiff was taking only Depakote ER."  *Id.*  Defendant Corbitt had no input into the medications prescribed for Plaintiff.  *Id.*  Plaintiff "received only those medications prescribed for him by a licensed physician."  Doc. 27, ex. B, pp. 2-3 (doc. 27-2).  Defendant Corbitt "certainly did not provide false observations of Plaintiff's behavior to his Psychiatrist in order to force medication on him."  Doc. 27, ex. B, p. 3 (doc. 27-2).

On May 24, 2006, Plaintiff showed signs of "increased instability through anger, unreasonableness, and loud and demanding behavior . . . ."  *Id.*  Due to Plaintiff's behavior, "it was determined to seek an Emergency Treatment Order which would allow Hospital medical staff to forcibly medicate him should it prove to be necessary."  *Id.*  "As

an immediate response to this instability, Plaintiff was prescribed the drug Risperdal by his Psychiatrist to assist in his treatment." *Id.* Plaintiff took the drug voluntarily for six days, but on May 30, 2006, when he complained of side effects to his doctor, he was taken off the medication. *Id.*

Throughout Plaintiff's entire stay at the Hospital, he "never refused to take his medication" and, although a court order was entered authorizing forcible injections if necessary, that "alternative was never needed." Doc. 27, ex. B, p. 3 (doc. 27-2). Defendant Corbitt "was not responsible for the application for the Forcible Medication Order as that was done by the Hospital Attorney after a request by the Medical Staff on May 24, 2006, arising from their concern about Plaintiff's behavior." *Id.,* at 3-4.

Defendant Corbitt reported her observations concerning Plaintiff's competency to the Circuit Judge in Brevard County, Florida, in a June 13, 2006, report. Doc. 27, ex. B, p. 4 (doc. 27-2). Defendant Corbitt "did not answer questionnaires for Plaintiff in order to falsify any information regarding his competency." *Id.*, at 3. Plaintiff was "discharged from the Hospital on August 12, 2006, and returned to Brevard County Jail." *Id.*, at 4. Defendant Corbitt regularly performs competency evaluations as part of her job as a Psychological Specialist. *Id.* The Hospital Administrator does not prepare competency reports for the courts. *Id.* After Plaintiff inquired as to obtaining a copy of his report, Defendant Corbitt assisted Plaintiff "with some forms to allow him to make a request of a copy from Medical Records." *Id.* She does not know whether Plaintiff ever followed through and requested a copy through the Hospital's procedure. *Id.*

**Analysis**

Defendants contend there are no genuine issues of material fact and that the facts show Plaintiff was always given proper treatment.  Plaintiff was never forced to take any medication and always voluntarily took the prescription prescribed by his Psychiatrist.  Plaintiff was never prohibited from participating in treatment and was not kept from communicating with either his attorney or his mother.  Plaintiff could attend classes and access library materials.  The evidence shows no violation of any constitutional right of Plaintiff and there is no evidence of mistreatment, neglect, or intentional harm.  There is also no evidence that Plaintiff's due process rights were violated throughout his stay at the Hospital.

Plaintiff has failed to come forward with any evidence in response to the summary judgment motion, despite being given several opportunities to do so.  First, on December 5, 2007, after review of the Defendants' motion to dismiss or, in the alternative, motion for summary judgment, doc. 27, I entered an order giving Plaintiff until January 25, 2008, to respond.  Doc. 30.  Plaintiff responded by filing a motion to strike Defendants' motion.  Doc. 31.  Plaintiff's motion to strike was denied, and he was reminded of the January 25th deadline.  Doc. 32.  Plaintiff responded by filing another motion to strike on December 12, 2007, doc. 33, which was likewise denied as successive.  Doc. 35.  That order, dated January 11, 2008, also noted that Defendants had clarified, doc. 34, that their motion should be construed as one seeking summary judgment.  Thus, Defendants were directed to file a separate statement of material facts by January 31, 2008, and Plaintiff was then advised of his obligation to respond pursuant to Rule 56.  Plaintiff's new deadline was established to be February 29, 2008,

and he was explicitly told that the Defendants facts, if uncontested, would be deemed "admitted" by Plaintiff if he did not file a statement of disputed facts.  Doc. 35.  Plaintiff did not respond.

Plaintiff did, however, file a motion requesting the court obtain evidence for him and appoint a public defender to represent him.  Doc. 37.  That motion was denied on February 1, 2008, and Plaintiff was *again* remind of the necessity to file a response to the pending summary judgment motion and provide his own affidavit presenting the facts of his case.  Doc. 39.  Plaintiff still did not respond.  Therefore, Defendants' evidence in this case is unrebutted and uncontested and the facts must be accepted as true.  There is no dispute of fact and no showing that Plaintiff was harmed in any way. Defendants Coley and Corbitt are entitled to summary judgment in their favor on all claims.

In light of the foregoing, it is respectfully **RECOMMENDED** that the summary judgment motion filed by Defendants Coley and Corbitt, doc. 27, be **GRANTED** and that judgment be entered in favor of these Defendants on all claims, and that the case be **REMANDED** for further proceedings concerning the claims against the remaining Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on April 29, 2008.


 s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**